UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CIVIL ACTION NO. 16-8375 (MLC)(DEA) |
| Plaintiff, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| THE REAL PROPERTY KNOWN AS : | |
| 212 EAST 47TH STREET, APT. 4E, : | |
| NEW YORK, NEW YORK; : | |
| : | |
| Defendant. : | |
| _____ : | |

**COOPER, District Judge**

This is a civil forfeiture action brought by the United States Government *in rem* against real property located in New York City. Tomer Yosef is a claimant of the property at issue and has moved to stay these proceedings under the rules applicable to forfeiture actions. For the reasons cited below, we will grant the stay requested by Mr. Yosef. We resolve this motion without oral argument. See L.Civ.R. 78.1(b).

**I.    Background**

Plaintiff United States of America filed a criminal complaint in this court in August 2016 against Tomer Yosef, a native and citizen of Israel.[1] The substance of the allegations against Mr. Yosef are recounted in the Complaint in this case. (Dkt. 1.)[2] Briefly, the Government alleges that Mr. Yosef committed wire fraud in violation of 18 U.S.C. § 1343 by

---

[1] See *United States of America v. Tomer Yosef*, Case No. 3:16-mj-4528.

[2] We will cite to documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers as "dkt." Pincites refer to ECF pagination.

1

defrauding two investors in connection with a technology startup company.  (Id. at 3–4.)  Mr. Yosef allegedly made various misrepresentations to the investors about the operation and progress of the company while taking much of the "investment" money for himself.  (Id. at 4–17.)

For the purposes of this action, the key allegation is that Mr. Yosef used these ill-gotten funds to purchase a condominium apartment located at 212 East 47th Street, Apartment 14E, New York, New York (the "Property").  (Id. at 21–24.)  The Complaint describes the various bank accounts that Mr. Yosef allegedly used to purchase the Property.  (Id. at 18–21.)  Technically, the Property was purchased by YG Property Holdings LLC ("YG Holdings"), a New York Limited Liability Company formed by Mr. Yosef.  (Id. at 22.)  Mr. Yosef is the sole member of YG Holdings.  (Id.)

The Government contends that Mr. Yosef's actions violated the wire fraud statute, 18 U.S.C. § 1343, and brought this case in November 2016 under 18 U.S.C. § 981, which provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)" is subject to forfeiture.  18 U.S.C. § 981(a)(1)(C).[3]  Mr. Yosef filed a Notice of Claim of his ownership of the Property in December 2016.  (Dkt. 5.)  Despite receiving several stipulations by the parties extending the deadlines to respond to the Complaint (see dkt. 6; dkt. 7; dkt. 9),

---

[3] Under Section 1956(c)(7)(A), the definition of "specified unlawful activity" includes offenses listed in 18 U.S.C. § 1961(1).  The offenses listed in Section 1961(1) include wire fraud in violation of 18 U.S.C. § 1343.

Mr. Yosef has not yet filed an answer. Mr. Yosef now moves to stay this case pursuant to 18 U.S.C. § 981(g)(2). (Dkt. 11.)

## II. Legal Standard

Defendants involved in parallel criminal and civil proceedings may face the "difficult choice between being prejudiced in the civil litigation, if the defendant asserts his or her Fifth Amendment privilege, or from being prejudiced in the criminal litigation if he or she waives that privilege in the civil litigation." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012). On one hand, asserting the Fifth Amendment in a civil case "may give rise to an adverse inference against the party claiming its benefits." Adkins v. Sogliuzzo, 625 F. App'x 565, 571 (3d Cir. 2015) (quoting SEC v. Graystone Nash, Inc., 25 F.3d 187, 190 (3d Cir. 1994)); see also McMullen v. Bay Ship Mgmt., 335 F.3d 215, 218 (3d Cir. 2003) (noting judicial discretion to tailor equitable remedy to balance civil litigant's Fifth Amendment rights and potential prejudice to adversary). On the other hand, a civil litigant may face the risk of waiving his Fifth Amendment protections or providing evidence that could be used against him in a criminal case. See Graystone Nash, 25 F.3d at 193 (noting that affidavit filed in civil case "raise[d] serious questions about whether defendants waived their privilege").

18 U.S.C. § 981(g)(2) enables a claimant to sidestep that dilemma by moving for a stay in a civil forfeiture action when there are related criminal proceedings. If a claimant so moves, the statute requires us to stay the civil proceeding if we determine that: (1) the claimant is the subject of a related criminal investigation or case; (2) the claimant has standing to assert a claim in the civil forfeiture proceeding; and (3) continuation of the

forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case.  18 U.S.C. § 981(g)(2).

Regarding the first inquiry, the statute defines "related criminal investigation or case" as "an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made." Id. § 981(g)(4). Moreover, "[i]n determining whether a criminal case or investigation is 'related' to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors." Id.

The second inquiry, standing, is designed to ensure that a claimant is properly before the court.  To contest a forfeiture, a claimant must have both Article III and statutory standing.  United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 150 n. 9 (3d Cir. 2003).  "Article III standing requires the claimant to show an interest in the property sufficient to create a 'case or controversy,' while statutory standing requires claimants to comply with certain procedures." Id. (quoting United States v. Contents of Accounts Numbers 3034504504 & 144-07143 at Merrill Lynch, Pierce, Fenner & Smith, Inc., 971 F.2d 974, 984 (3d Cir. 1992).  To establish statutory standing, claimants must comply with the requirements of 18 U.S.C. § 983(a)(4)(A).  United States v. $487,825.000 in U.S. Currency, 484 F.3d 662, 664 (3d Cir. 2007), as amended (May 14, 2007).  That statute in turn requires would-be claimants to file a claim asserting interest in the property in accordance with the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental

Rules").[4] 18 U.S.C. § 983(a)(4)(A). Supplemental Rule G(5)(a)(i) governs the filing of a claim, and requires that the claim: (1) identify the specific property claimed; (2) identify the claimant and state the claimant's interest in the property; (3) be signed by the claimant under penalty of perjury; and (4) be served on the applicable government attorney. Supplemental Rule G(5)(a)(ii) sets out certain deadlines for the filing of the verified claim. Supplemental Rule G(5)(b) requires claimants to serve and file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days after the filing of the claim.

The Third Circuit has explained that the "most significant requirement" is that the claimant file a verified claim. See $487,825.000, 484 F.3d at 664.[5] Requiring a timely claim ensures that claimants "come forward as quickly as possible after the initiation of forfeiture proceedings, so that the court may hear all interested parties and resolve the dispute without delay." Id. (quoting $8,221,877.16, 330 F.3d at 150 n. 9). And requiring a *verified* claim "minimize[s] the danger of false claims by requiring claims to be verified or solemnly affirmed." Id. Consequently, a "claimant who fails to file a verified statement has no standing to contest a forfeiture." Id.; see also United States v. 8136 S.

---

[4] The Federal Rules of Civil Procedure also apply to civil forfeiture proceedings, but only to the extent they are not "inconsistent with" the Supplemental Rules. See United States v. $263,327.95, 936 F. Supp. 2d 468, 471 (D.N.J. 2013) (citing Supplemental Rule A(2)).

[5] Prior to amendments to the Supplemental Rules in 2005, the filing of a verified claim (previously called a "statement of interest") was governed by Supplemental Rule C(6). See United States v. $410,000.00 In U.S. Currency, No. 07-0598, 2007 WL 4557647, at *4 n.3 (D.N.J. Dec. 21, 2007). Although some of the applicable case law cites Supplemental Rule C(6), the policy concerns underpinning those decisions apply equally to the substantively similar requirements under the now-applicable Supplemental Rule G(5).

Dobson Street, 125 F.3d 1076, 1082 (7th Cir. 1997) ("If no claim is filed, a putative claimant lacks standing to contest a forfeiture.").

Although the Third Circuit has emphasized that claimants must carefully adhere to the procedural requirements for filing a claim, it has also cautioned against overly-rigid application of the rules when assessing standing. Consequently, we are mindful that our analysis of a claimant's compliance with procedural requirements "should not be so strict in interpreting those requirements that the outcome defies 'old-fashioned common sense.'" See United States v. $263,327.95, 936 F. Supp. 2d 468, 472 (D.N.J. 2013) (quoting United States v. Various Computers & Computer Equip., 82 F.3d 582, 585 (3d Cir.1996)). Indeed, to assert statutory standing, the "burden is minimal and does not require that defendants explain in any detail the nature of their interest." United States v. $410,000.00 In U.S. Currency, No. 07-0598, 2007 WL 4557647, at *5 (D.N.J. Dec. 21, 2007).

The final inquiry in connection with securing a stay under Section 981(g)(2) is whether continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation or case. See 18 U.S.C. § 981(g)(2).

**III. Parties' Arguments**

Mr. Yosef contends that a stay in this case is appropriate because each of the required conditions in Section 981(g)(2) is present here. First, he asserts the existence of an open criminal investigation against him. (Dkt. 11-1 at 9–10.) Second, he claims to have the requisite Article III and statutory standing by means of filing a timely verified claim and his allegedly undisputed ownership interest in the Property. (Id. at 12.) Finally, he submits that

6

his Fifth Amendment right against self-incrimination in the related criminal case would be burdened absent a stay. (Id. at 13–14.) Mr. Yosef observes that the allegations in the civil forfeiture complaint here "reads like a criminal prosecution" and "explicitly alleges that [Mr. Yosef] committed wire fraud. (Id. at 13.) Consequently, he argues that "compelling [him] to file an answer . . ., answer interrogatories and document requests, and provide deposition testimony, would be tantamount to compelling him to testify against himself." (Id.)

The Government concedes that Mr. Yosef has satisfied the first requirement of Section 981(g)(2) in light of the pending criminal case against him (dkt. 13 at 10), but submits that Mr. Yosef cannot demonstrate the second and third requirements—namely, the requisite standing and burden on his Fifth Amendment rights.

The Government first argues that Mr. Yosef lacks statutory standing because his verified claim fails to satisfy the procedural requirements of Supplemental Rule G(5)(a). (Dkt. 13 at 13–15.) The alleged defect in Mr. Yosef's verified claim is that it does not mention YG Holdings, the record title-holder of the Property. (Id. at 13.) The Government insists that this is "not a technical point" because Mr. Yosef has not demonstrated that he "exercises dominion and control" over the Property and his failure to describe his relationship to YG Holdings could result in "multiple other individuals . . . alleg[ing] to be members of YG Holdings, and claim[ing] an ownership interest" in the Property. (Id. at 13–14.)

The Government also submits that Mr. Yosef's failure to file an answer in the case demonstrates that he lacks both Article III *and* statutory standing. They argue that Mr. Yosef's failure to file an answer renders us unable to determine whether there is Article III standing because "[a]nswering the complaint enables the plaintiff and the court to determine

whether there is a 'case and controversy' for Article III purposes because the claimant is required to admit, deny, or invoke the Fifth Amendment for each paragraph in the complaint." (Id. at 15.)  They add that "[i]f all the facts are admitted or even a select group of key facts are admitted, there may be no controversy for Article III standing."  (Id.)

The Government claims that Mr. Yosef's failure to file an answer pursuant to Supplemental Rule G(5)(b) means that he lacks statutory standing to seek a stay.  (Id. at 15–21.)  In their view, "the law is clear that the filing of an answer is necessary for a claimant to achieve statutory standing."  (Id. at 16.)  In support of that assertion, they cite cases from our sister courts.  See United States v. All Right, Title & Interest in Prop., Appurtenances, & Improvements Known as 479 Tamarind Drive, Hallendale, Fla., No. 98-2279 DLC, 2011 WL 1045095, at *3 (S.D.N.Y. Mar. 11, 2011) ("When a claimant fails to file an answer, he or she does not have statutory standing to bring a claim."); United States v. $229,590.00 in U.S. Currency Seized from a Safe in the Home of Dallas Cty. Com'r Price, No. 3:12-0893, 2012 WL 4354814, at *2 (N.D. Tex. Sept. 24, 2012) ("The filing of an answer as required by the statute and Rule G is a necessary prerequisite to statutory standing in a civil forfeiture case.") The Government believes procedural leniency would be particularly inappropriate here because Mr. Yosef has already been granted multiple extensions to file an answer.  (Dkt. 13 at 20.)  The Government also argues that Section 981(g)(2) does not authorize stay at this stage of the proceeding because "[t]he focus of section 981(g)(2) is on delaying discovery, not pleadings" and this case has not yet entered discovery.  (Dkt. 13 at 15.)

The Government also disputes Mr. Yosef's contention that answering the Complaint would burden his Fifth Amendment rights.  They submit that Mr. Yosef is "free to invoke the

8

Fifth Amendment protections at any time," including in his answer, and that "[a]dmitting to or denying the facts in the complaint will not tell the Government anything that it does not already know." (Dkt. 13 at 22–23.) They characterize an answer as merely a "procedure for the Court to determine what issues will and will not be contested," while also "indicating whether the Claimant will contest the jurisdiction and venue of the court." (Id. at 23.) The Government portrays Mr. Yosef's concerns about engaging in discovery absent a stay as an "unwarranted procedural jump" that "conflates multiple different stages of litigation." (Dkt. 13 at 25.) They argue that Mr. Yosef "only needs to file an answer, not respond to discovery requests," at this time. (Id.) Thus, although the Government does not dispute the idea that "civil discovery would burden the Claimant's right against self-incrimination," they suggest that there is less potential burden at the pleading stage. (Id. at 26.) They dismiss in a footnote Mr. Yosef's concerns about potential adverse inferences from his Fifth Amendment invocations by noting that such adverse inferences are permissible, not mandatory. (Id.)

Lastly, and apparently apart from the parties' dispute over whether the requirements for a stay under Section 981(g)(2) have been met, the Government argues that a stay would undercut its interest in the prompt resolution of this case and potentially cause the Property to lose value over time. (Id. at 21.) Any such depreciation would in turn injure victims who might be compensated should the government prevail in this forfeiture action. (Id.) The Government cites unpaid maintenance fees and back taxes as examples of how the value of the Property has declined over time. (Id.) In reply, Mr. Yosef responds that steps have been taken to repay those debts and that he is willing to stipulate that he will not "sell, assign,

9

mortgage, or in any way encumber the property for the duration of the requested stay." (Dkt. 14 at 8.)

## IV. Analysis

Before turning to the statutory requirements for a stay under Section 981(g)(2), we must first address the Government's contention that Section 981(g)(2) does not authorize us to issue a stay before an answer is filed. (Dkt. 13 at 15–16.) Although the bulk of the Government's opposition brief frames Mr. Yosef's failure to file to answer as a defect in ***standing*** (one of the Section 981(g)(2)'s requirements), they also argue that Section 981(g)(2) "does not permit claimants to seek a stay . . . because an answer is a pleading and not part of discovery" and "[t]he focus of Section 981(g)(2) is on delaying discovery, not pleadings." (Id. at 15.)

After considering the language of the statute, we conclude that Section 981(g)(2) authorizes us to grant a stay, including prior to the filing of an answer, if the enumerated conditions of that provision are present. Section 981(g)(2) authorizes us to "stay the civil forfeiture proceeding" without reference to discovery. Although a subsequent provision, Section 981(g)(3), references the "impact of civil discovery described in [Section 981(g)(2)]," we do not read that provision as circumscribing our authority to grant a stay before an answer is filed. Where, as here, the filing of an answer implicates the claimant's Fifth Amendment rights, we conclude that Section 981(g)(2)'s authorizes a stay here.[6]

---

[6] The Government argues that our inherent discretion to stay proceedings has been "circumscribed" in forfeiture cases by Section 981(g). See United States v. $9,041,598.68 (Nine Million Forty One Thousand Five Hundred Ninety Eight Dollars & Sixty Eight Cents), 163 F.3d 238, 251 (5th Cir. 1998). Because we conclude that Mr. Yosef has satisfied the requirements for a stay under Section

Turning to the requirements of Section 981(g)(2), we note preliminarily that the Government has conceded the existence of a related criminal case and that the first requirement of Section 981(g)(2) is satisfied. (Dkt. 13 at 10.) Consequently, we turn now to whether Mr. Yosef has standing to seek this stay and whether allowing this forfeiture action to continue would burden his Fifth Amendment rights. We then address the Government's concern about preserving the value of the Property during the stay.

A. <u>Standing</u>

As noted above, Mr. Yosef must have both Article III and statutory standing to seek a stay in this case. <u>See</u> <u>United States v. $8,221,877.16 in U.S. Currency</u>, 330 F.3d 141, 150 n. 9 (3d Cir. 2003). For Article III standing, Mr. Yosef's interest in the Property must be sufficient to satisfy the United States Constitution's "case or controversy" requirement. Here, we conclude that Mr. Yosef has Article III standing to seek a stay because of his ownership interest in the property subject to forfeiture in this case. Mr. Yosef's ownership of the Property is not seriously disputed. He has filed a verified claim stating his ownership interest. (Dkt. 5.) The Government's Complaint explains that Mr. Yosef both formed and is the sole member of YG Holdings, the record title-owner of the Property. (Dkt. 1 at 22.) Further, the Government's opposition brief describes YG Holdings as "an alter ego" that Mr. Yosef "created to conceal . . . the true owner of the Defendant in rem"—namely, Mr. Yosef. (Dkt.

---

981(g)(2), we need not address whether the reasoning in that case—which in any event analyzed a different provision of Section 981—would prevent us from staying the case under our inherent discretion if warranted by the circumstances.

11

13 at 13.) In sum, Mr. Yosef's ownership interest in the Property satisfies Article III standing requirements.[7]

The most vigorous dispute between the parties is whether Mr. Yosef's failure to file an answer strips him of statutory standing to pursue a stay under Section 981(g)(2). The Government submits that only strict adherence to the procedural requirements of Supplemental Rule G(5)—including filing an answer under Rule G(5)(b)—confers statutory standing on a claimant. (Dkt. 13 at 12.) Mr. Yosef urges a more lenient approach emphasizing the greater importance of the verified claim. (Dkt. 14 at 5–8.)

Although the Government asserts that "the law is clear that the filing of an answer is necessary for a claimant to achieve statutory standing" (dkt. 13 at 16), they cite no cases within the Third Circuit directly supporting that proposition. As the Government notes, the Third Circuit has stated that "[t]o establish statutory standing in a forfeiture case, the claimant must comply with the procedural requirements set forth in [the Supplemental Rules] and § 983(a)(4)(A)." $487,825.000, 484 F.3d at 664. But $487,825.000 does not address the failure of a claimant to file an answer; indeed, the Third Circuit explained there that "[t]he most significant requirement is that the claimant must timely file a verified statement of interest." Id. The Third Circuit's emphasis on the statement of interest (now a "verified claim" under the amended Supplemental Rules) was explicitly premised on two policy goals: first,

---

[7] In light of the Government's own allegations describing Mr. Yosef's interest in YG Holdings, we reject the Government's argument that Mr. Yosef's subsequent failure to describe that interest in his verified claim somehow deprives him of statutory standing. (Dkt. 13 at 13–14.) We are likewise unconvinced by the Government's assertion that Mr. Yosef's failure to file an answer makes it impossible for us to assess standing. (Id. at 15.) There is no dispute about Mr. Yosef's ownership of the Property, which is the crux of his Article III standing to challenge the forfeiture.

12

"forc[ing] claimants to 'come forward as quickly as possible . . . so that the court may hear all interested parties and resolve the dispute without delay'" and second, "'minimiz[ing] the danger of false claims by requiring claims to be verified or solemnly affirmed.'" Id. (quoting United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 150 n.9 (3d Cir. 2003)). Such procedural rigor makes sense in light of the "substantial danger of false claims" that arise in forfeiture actions. United States v. Commodity Account No. 549 54930 at Saul Stone & Co., 219 F.3d 595, 597 (7th Cir. 2000).

But we are also mindful of the Third Circuit's instruction that our application of the procedural rules should not defy "old-fashioned common sense." United States v. Various Computers & Computer Equip., 82 F.3d 582, 585 (3d Cir. 1996). Indeed, in Various Computers, the Third Circuit found that a claimant with a "colorable claim to ownership" of the property at issue had standing to challenge a forfeiture proceeding. Id. Although the claimant in that case had failed to submit a verification with his claim, the Third Circuit concluded it could not "equitably deny" standing, particularly where "the court and the Government were aware of the source of [the claimant's] interest in the property and the basis for his claim of ownership." Id. In another recent case assessing whether a claimant had statutory standing in a forfeiture action, we adopted a similar common sense approach. See United States v. $263,327.95, 936 F. Supp. 2d 468, 473 (D.N.J. 2013). In $263,327.95, the issue was whether a simple description of a claimant's ownership interest in a verified claim was sufficient to confer standing. Id. We held that it was, explaining that "in cases where the complaint describes the claimant's interest in the property in detail, the goals of the Rules have

13

been met because the Government is on notice of the claimant's interest in the property, and there is very little risk that the claimant is filing a false claim." Id.

Common sense here likewise compels us to conclude that Mr. Yosef has statutory standing to pursue a stay here. He timely filed a verified claim of ownership in the Property (dkt. 5), which is explicitly the "most significant requirement" for establishing statutory standing. See $487,825.000, 484 F.3d at 664. And importantly, there is simply no real dispute about Mr. Yosef's ownership interest in the defendant Property: the parties appear to agree that Mr. Yosef, as sole member of YG Holdings, owns the Property at issue here. The policy concerns behind requiring strict compliance with the rules—*i.e.*, resolving disputes quickly and weeding out false claims—are not implicated here where the undisputed sole owner of the property timely filed a claim. See $263,327.95, 936 F. Supp. 2d 468 at 473 ("The application of the statutory requirements should be strict, but not needlessly pedantic.").

We note that the Government cites a pair of cases suggesting that claimants must file an answer to have statutory standing. In 479 Tamarind Drive, the court concluded that "[w]hen a claimant fails to file an answer, he or she does not have statutory standing to bring a claim." United States v. All Right, Title & Interest in Prop., Appurtenances, & Improvements Known as 479 Tamarind Drive, Hallendale, Fla., No. 98-2279, 2011 WL 1045095, at *3 (S.D.N.Y. Mar. 11, 2011). That case, however, dealt with a much more tenuous claim of ownership and a far more delinquent claimant. There, the claimant had not filed an answer in thirteen years of litigation and, unlike here, the claimant's ownership interest in the property was legally insufficient to support even Article III standing. Id. at *2–3. The Government also cites an unpublished case from the Northern District of Texas holding that

"[t]he filing of an answer as required by the statute and Rule G is a necessary prerequisite to statutory standing in a civil forfeiture case." See United States v. $229,590.00 in U.S. Currency Seized from a Safe in the Home of Dallas Cty. Com'r Price, No. 3:12-0893, 2012 WL 4354814, at *2 (N.D. Tex. Sept. 24, 2012). That case relied primarily on an unpublished *per curiam* opinion of the Eleventh Circuit. See id. (citing United States v. $12,126.00 in U.S. Currency, 337 Fed. Appx. 818, 820 (11th Cir.2009)).[8] We disagree that these cases make it "clear that the filing of an answer is necessary for a claimant to achieve statutory standing" (dkt. 13 at 16), particularly in light of Third Circuit precedent urging a more nuanced approach. See, e.g., $263,327.95, 936 F. Supp. 2d at 472.

For these reasons, we conclude that Mr. Yosef has satisfied the standing requirement of Section 981(g)(2)(B).

B. Burden to Fifth Amendment Rights

The final inquiry under Section 981(g)(2) is whether allowing this forfeiture action to continue would burden Mr. Yosef's Fifth Amendment rights. 18 U.S.C. § 981(g)(2)(C). Mr. Yosef's argument is straightforward; he argues that answering the Complaint necessarily implicates his right against self-incrimination because the Complaint contains explicit allegations that he committed criminal acts. (Dkt. 11-1 at 13.) A review of the Complaint bears out that assertion. Among other allegations, the Complaint states that Mr. Yosef "defrauded the Victims of more than $1.6 million in additional funds" (dkt. 1 at 4); made

---

[8] The Eleventh Circuit concluded that a district court had not abused its discretion by striking a claim where the claimant had failed to file a timely claim or submit an answer. See $12,126.00, 337 Fed. App'x. at 820 (explaining that "the district court was entitled to insist upon strict compliance with the procedural requirements set forth in Rule G(5).")

15

various false representations (id. at 6); disguised his "scheme" by taking "steps to prevent the Victims from discovering that the App was not achieving what Yosef had claimed" (id. at 6); and "misappropriated substantial amounts of these funds for his own personal use" (id. at 13). Indeed, this entire action is premised on the allegation Mr. Yosef purchased the Property "with the proceeds of his scheme to defraud the Victims." (Id. at 24.) Mr. Yosef's alleged criminal conduct is the backbone of the Complaint, and we agree that compelling him to specifically admit or deny those allegations in an answer would burden his right against self-incrimination.

The Government raises a handful of arguments in response. First, they assert that an answer is "is a procedure for the Court to determine what issues will and will not be contested" and that "[a]dmitting or denying facts in the complaint will not tell the Government anything it does not already know." (Dkt. 13 at 23.) While that may be true, the Government avoids the question of whether Mr. Yosef's admissions or denials of those allegations could yield admissible evidence in the pending criminal prosecution against him or cause him to waive his Fifth Amendment rights with respect to certain of those allegations.

The Government next argues that Mr. Yosef's decision to invoke the Fifth Amendment does not relieve him of his burden to establish standing. (Id. at 24.) We agree, but as noted above, we conclude that Mr. Yosef does have the requisite standing.

The Government also objects to Mr. Yosef's concerns about self-incrimination by noting that the case is not yet in discovery. (Id. at 25.) They argue that Mr. Yosef "only needs to file an answer, not respond to discovery requests," which they believe is an important distinction because they do not dispute that civil discovery *would* burden Mr. Yosef's Fifth

16

Amendment rights. (Id. at 25–26.) As noted above, we believe that requiring Mr. Yosef to individually respond to specific factual allegations regarding his allegedly criminal conduct would unduly burden his Fifth Amendment rights. The Government's concession that discovery in this case would burden those rights does not persuade us otherwise. Indeed, it bolsters Mr. Yosef's argument that this action is closely entwined with the related criminal proceeding against him.

Nor are we persuaded by the Government's suggestion that Mr. Yosef bears little risk from invoking the Fifth Amendment in this case because adverse inferences from those invocations are "permissible, not mandatory." (Dkt. 13 at 25.) It is too soon to know whether or how any Fifth Amendment invocations might be used against Mr. Yosef in this case. The inquiry before us now is whether continuation of this case will burden Mr. Yosef's Fifth Amendment rights in the related criminal case. We hold that it would. Accordingly, and for the reasons above, we conclude that Mr. Yosef has satisfied the burden requirement of Section 981(g)(2)(C).

### C. Preserving Property Value

Lastly, the Government urges us to deny Mr. Yosef's request for a stay because they are concerned that the defendant Property may lose value over time, potentially to the detriment of alleged victims who might benefit from the sale of the Property if it is forfeited. (Dkt. 13 at 21.) In response, Mr. Yosef represents that steps have been taken to pay any fees that might reduce the value of the property, and has indicated that he will not "sell, assign,

mortgage, or in any way encumber the property for the duration of the requested stay." (Dkt. 14 at 8.)

While the Government's concerns are understandable, they do not affect our decision to stay this case. The statutory conditions for a stay under Section 981(g)(2) do not include an assessment of whether the value of the defendant property will decline over time. The statute does, however, authorize us to "enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect." 18 U.S.C. § 981(g)(6). In light of Mr. Yosef's stated willingness to both cover the fees associated with the property and to not sell or otherwise encumber the Property, we will direct the parties to submit a stipulation, to be signed by the Court, outlining Mr. Yosef's duties and obligations towards the Property while this case is stayed. Should the parties fail to agree on the terms of such a stipulation, we will direct the parties to submit proposed forms of order to preserve the Property pursuant to 18 U.S.C. § 981(g)(6).

## CONCLUSION

For the reasons discussed above, we will grant Mr. Yosef's Motion to Stay (dkt. 11) and issue an appropriate order.

  s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

**Dated:** April 25, 2017